

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00317-CV

---

ENSIGN GROUP, INC., SAVOY                          APPELLANTS
HEALTHCARE, INC., AND XAVIER
PRUITT, INDIVIDUALLY

V.

ERICA MAMMEN                                        APPELLEE

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-04607-431

----------

## MEMORANDUM OPINION[1]

----------

Appellants Ensign Group, Inc.; Savoy Healthcare, Inc.; and Xavier Pruitt, individually, appeal the trial court's interlocutory order denying their motion to compel arbitration of Appellee Erica Mammen's claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015). We will reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

Mammen began working for Savoy Healthcare, Inc. d/b/a Heritage Gardens Rehabilitation and Healthcare in May 2010. Heritage Gardens terminated Mammen's employment on April 18, 2014, and Mammen sued Appellants soon thereafter, on June 18, 2014. According to Mammen's first amended original petition, on or about May 28, 2014, a prospective employer informed Mammen that she was going to receive "an offer letter of employment." Shortly thereafter, however, the prospective employer rescinded the offer letter "because of a bad reference" from Appellants. Mammen alleged that Pruitt had made the following statements about her: (i) "upon her termination, [Mammen] was escorted out of the building by Police"; (ii) "[Mammen] worked two (2) years for Defendants, not six (6)"; and (iii) "[Mammen] was a 'lazy' worker and not re-hirable." Mammen averred that Appellants were negligent and had committed slander and tortious interference with prospective contract.

Appellants answered and moved to compel arbitration of Mammen's claims, arguing that she had executed a written arbitration agreement that covered each of her claims. The agreement, signed by Mammen on May 3, 2010, states in relevant part as follows:

> Heritage Gardens Rehabilitation and Healthcare
> (referred to throughout as "the Employer")
>
> AGREEMENT TO ARBITRATE CLAIMS (*New Employees*)
>
> Alternative Dispute Resolution (ADR) is the preferred method for collegially and internally resolving differences that may arise in the workplace through grievance and staff complaint procedures. The Agreement to Arbitrate Claims ("Agreement") establishes the

2

method chosen by the Employer and Employee (hereafter "Parties") to resolve disputes if informal internal ADR methods prove unsuccessful.  The Employee agrees to submit all claims, as outlined below, to binding arbitration, in exchange for employment with this Employer.  The Employee is required to sign this Agreement prior to the commencement of employment with the Employer.

Article 1.  The Employer and the Employee, named below, agree as Parties to this contract, to the resolution by binding arbitration of all claims, except:  (1) criminal proceedings, (2) breach of confidentiality obligations, and (3) any other claims not subject to arbitration under federal and Texas law.  The claims that otherwise would have been decided in a court of law, whether local, state or federal, will instead be decided by arbitration, whether or not the claims subject to this Agreement arise out of the Employee's employment, remuneration or termination, that the Employee may have against the Employer . . . .

Article 2.  The claims covered by this Agreement include, but are not limited to, . . . claims for personal, physical or emotional injury arising from negligence, any intentional tort, . . . and claims for violation of any federal law, state or other governmental law, statute or regulation not otherwise excluded under Article 1 of this Agreement.  The Parties agree that final and binding arbitration shall be the sole and exclusive remedy for resolving any claims covered by this Agreement, except as state and federal law provides for judicial review of arbitration proceedings.  By entering into this contract the Parties are accepting the use of arbitration and voluntarily giving up their right to have such disputes decided in a court of law before a jury.

Article 3.  The Federal Arbitration Act (FAA) will govern the interpretation, enforcement, and all judicial proceedings under and/or related to arbitration under this Agreement. . . .  The Employer shall pay for up to $1,000.00 of the arbitrator's fees and the parties shall split the remaining arbitrator's fees, if any, equally.  Each party shall bear its own fees and costs for the arbitration and shall be responsible for their own attorney's fees, if any, in arbitration. . . .

Article 4.  . . .  This Agreement shall survive the termination of Employee's employment . . . .   This Agreement is binding on all

Parties, including the Employee, their personal representatives, spouse, children, agents, successors, and heirs.

. . . .

Article 6.  The terms of this Agreement are severable.  If any term or provision of this agreement is determined to be illegal or unenforceable by a court of competent jurisdiction, the remaining terms and provisions of this agreement shall remain in full force and effect.

In response to Appellants' motion to compel, Mammen argued that the agreement does not cover her claims, is substantively unconscionable, and violates her procedural due process rights.  The trial court denied Appellants' motion.

Appellants argue in their only issue that the trial court erred by denying their motion to compel arbitration.  They contend that the valid arbitration agreement covers Mammen's claims and that it is neither substantively nor procedurally unconscionable.

Mammen responds that her claims, which arose from tortious conduct that occurred *after* her employment was terminated, fall outside the scope of the arbitration agreement because the agreement is limited (i) to claims arising in the workplace and (ii) for which internal alternative dispute resolution procedures have failed, as specified in the agreement's introductory paragraph.  Alternatively, Mammen argues that Article 3's cost-splitting provision renders the agreement substantively unconscionable and that her inability to utilize Appellants' internal alternative dispute resolution procedures, which are

4

"conditions precedent" to arbitration, render the agreement procedurally unconscionable.

We review de novo whether an enforceable agreement to arbitrate exists. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). We defer to the trial court's factual determinations that are supported by the record and review legal questions de novo. *Id.*; *Garcia v. Huerta*, 340 S.W.3d 864, 868–69 (Tex. App.—San Antonio 2011, pet. denied).

A party seeking to compel arbitration must establish (1) a valid arbitration agreement (2) whose scope includes the claims asserted. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Under the Federal Arbitration Act (FAA), an agreement to arbitrate is valid if it meets the requirements of the general contract law of the applicable state. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding); *see Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542, 547 (Tex. App.—Texarkana 2014, no pet.) ("The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."). To determine whether an arbitration agreement covers a party's claims, a court must focus on the complaint's factual allegations rather than the legal causes of action asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *see In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 366 (Tex. App.—Beaumont 2008, orig.

proceeding) (stating that to come within the scope of an arbitration provision, a party's allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision). We resolve doubts as to scope in favor of finding coverage. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding).

The written arbitration agreement's introductory paragraph clarifies that Mammen entered into the agreement in exchange for and before she began her employment with Heritage Gardens. Mammen signed the agreement and noted the date. The following conspicuous language is located just above her signature: "THE UNDERSIGNED CERTIFIES THAT HE/SHE HAS READ THIS AGREEMENT, UNDERSTANDS THIS AGREEMENT, HAS BEEN GIVEN A COPY OF THE AGREEMENT AND AGREES THAT BY SIGNING THIS AGREEMENT, HE/SHE AND THE EMPLOYER ARE GIVING UP THEIR RESPECTIVE RIGHTS TO A JURY TRIAL." Therefore, the arbitration agreement is valid.

Turning to the agreement's scope, we disagree with Mammen that the agreement applies only to claims arising in the workplace and for which internal alternative dispute resolution procedures have failed. This language—contained at the outset of the agreement—is akin to recitals in a contract, which generally will not control the operative clauses in a contract unless the latter are ambiguous. *See City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699,

6

722 (Tex. App.—Fort Worth 2008, pet. dism'd). More importantly, however, Mammen relies on this language to the exclusion of the rest of the agreement, which unambiguously identifies its scope. The introductory paragraph states that the employee agrees "to submit all claims, *as outlined below*, to binding arbitration." [Emphasis added.] Article 1 outlines the claims that are subject to arbitration: "*all claims*, except: (1) criminal proceedings, (2) breach of confidentiality obligations, and (3) any other claims not subject to arbitration under federal and Texas law." [Emphasis added.] Mammen's tort claims do not fall within any of the three exceptions; therefore, the agreement covers her claims.

Mammen complains about the agreement's broad scope, figuring that if Appellants' interpretation is correct, then "any claim arising outside of the workplace and at any time in the future would have to be arbitrated." The agreement expressly addresses Mammen's concern, leaving no doubt about its expansive coverage. The three exceptions aside, arbitration is required "*whether or not* the claims subject to this Agreement arise out of the Employee's employment, remuneration or termination." [Emphasis added.] Mammen's claims plainly arise from her employment, remuneration, or termination, and are therefore subject to arbitration, *see Bath Junkie Franchise*, 246 S.W.3d at 366, but even if they did not so arise, the claims would still be arbitrable. *See, e.g.*, *Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 791 (Tex. App.—Fort

7

Worth 2008, orig. proceeding) (enforcing arbitration agreement that required arbitration of "[a]ll controversies which may arise between the parties").

Once the party seeking arbitration establishes both validity and scope, the trial court must compel arbitration unless the party opposing arbitration proves a defense precluding enforcement. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Mammen argues that the arbitration agreement is substantively unconscionable because Article 3 requires her to pay half of the arbitration fees after Appellants pay the first $1,000 due, and "[i]t was undisputed before the trial court that [she] was unemployed since her termination and lacked resources sufficient to pay for half of the arbitration costs."[2] However, a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring excessive costs. *In re Olshan Found. Repair*, 328 S.W.3d 883, 895 (Tex. 2010) (orig. proceeding). "[P]arties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id.* "Evidence that merely speculates about the risk of possible cost is insufficient." *Id.* Inconsistent with the burden that *Olshan* places upon Mammen, she has provided no evidence about the arbitration fees that she will likely incur; she merely speculates that they will be unaffordable, whatever they are. Moreover,

---

[2]Appellants did not somehow waive their argument that Mammen's unconscionability defense lacks merit.

Appellants confirmed in the trial court that they "are willing to assume responsibility for the balance of the arbitrator's fees based on a showing that [Mammen] i[s] unable to afford same." Consequently, Mammen's substantive unconscionability defense is unpersuasive.

Again referencing part of the arbitration agreement's introductory language, Mammen argues that the agreement is procedurally unconscionable because, as an employee who has been terminated, she is unable to utilize Appellants' internal alternative dispute resolution procedures. But as explained above, the valid arbitration agreement covers Mammen's claims and is not so limited.

The trial court erred by denying Appellants' motion to compel arbitration. Accordingly, we sustain Appellants' sole issue, reverse the trial court's order denying Appellants' motion to compel arbitration, and remand this cause to the trial court for further proceedings consistent with this opinion.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DELIVERED: May 14, 2015

9