**Opinion issued December 30, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00638-CV

_____

## TAYLOR MORRISON OF TEXAS, INC. AND TAYLOR WOODROW COMMUNITIES-LEAGUE CITY, LTD., Appellants

## V.

## JACK RICHARD SKUFCA, JR. AND ERIN SKUFCA, Appellees

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 19-CV-1574**

## O P I N I O N

Related to the construction of their new home, Jack and Erin Skufca signed an arbitration agreement. The agreement contained a provision delegating to the arbitrator the authority to determine gateway issues of arbitrability, including enforceability of the arbitration agreement. Pursuant to the Federal Arbitration Act

(FAA) and the arbitration agreement's delegation provision, homebuilders Taylor Morrison of Texas, Inc. and Taylor Woodrow Communities-League City, Ltd. filed a motion to compel arbitration, seeking to arbitrate gateway questions of arbitrability.

After signing and vacating a series of orders, the trial court ultimately signed an order severing the language of the delegation provision requiring gateway issues of arbitrability to be decided by the arbitrator and modifying the provision to give the trial court, rather than the arbitrator, the right to determine those issues. Concomitantly, the trial court considered questions of the arbitration agreement's enforceability raised by the Skufcas. They argued that certain provisions in the arbitration agreement were unconscionable, including the delegation provision, rendering the arbitration agreement unenforceable. Based on the Skufcas' arguments, the trial court severed additional provisions of the arbitration agreement, including a provision requiring arbitration with the American Arbitration Association (AAA). Rather than with the AAA, the trial court ordered the parties to arbitrate with an arbitrator selected by the court.

Given its function when viewed in the context of the record, the trial court's order effectively denied Taylor Morrison's and Taylor Woodrow's motion to compel arbitration of gateway issues of arbitrability. Taylor Morrison and Taylor Woodrow (referred to hereafter as Appellants) appeal the order. Because, as discussed below,

2

the trial court abused its discretion in denying Appellants' motion to compel arbitration, we reverse the order and remand to the trial court.

## Background

On September 27, 2016, Jack and Erin Skufca signed a purchase agreement, agreeing to purchase a new home in the Mar Bella subdivision to be constructed by Taylor Woodrow. The Skufcas closed on the home in April 2017 and moved in with their two minor children.

In August 2019, the Skufcas sued Taylor Woodrow. They also sued Taylor Morrison of Texas, Inc., which the record reflects had an ownership interest in Taylor Woodrow. Jack filed suit individually, and Erin filed suit individually and as next friend of their two children. In their petition, the Skufcas alleged that, after living in their new home for less than a year, they developed concerns that mold growth in the home was making their children ill. Testing revealed elevated levels of mold and mold-related toxins in the home. They claimed that their home was defectively constructed, causing moisture problems, which led to mold growth. The Skufcas also alleged that Appellants were aware of mold issues in other Mar Bella homes constructed by Taylor Woodrow but had failed to disclose the issues to them.

Paragraph 11 of the purchase agreement contained an arbitration agreement, which provided in relevant part as follows:

11) Dispute Resolution—Arbitration:

Any and all claims, controversies, breaches or disputes by or between the parties hereto, arising out of or related to this Purchase Agreement, the property, the subdivision or community of which the property is a part . . . whether such dispute is based on contract, tort, statute, or equity, including without limitation, any dispute over [an (a)–(h) list of specific causes of action] or (i) any other matter arising out of or related to the interpretation of any term or provision of this Purchase Agreement, or any defense going to the formation or validity of the agreement, or any provision of this Purchase Agreement, including earnest money disputes, this arbitration agreement, allegations of unconscionability, fraud in the inducement, or fraud in the execution, whether such dispute arises before or after closing (each a "Dispute"), shall be arbitrated pursuant to the Federal Arbitration Act and subject to the procedures set forth a follows:

a.   This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any Dispute concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, any challenges to the enforcement or the validity of the agreement, or this arbitration agreement, or the scope of arbitrable issues under this arbitration agreement, and any defense relating to the enforcement of this arbitration agreement, including without limitation, waiver, estoppel, or laches, shall be decided by an arbitrator in accordance with this arbitration agreement and not a court of law.

b.   In the event that a Dispute arises between the parties, such Dispute shall be resolved by and pursuant to the arbitration rules and procedures of American Arbitration Association in effect at the time the request for arbitration is submitted. In the event the American Arbitration Association is for any reason unwilling or unable to serve as the arbitration service, then the parties shall select another reputable arbitration service. If the parties are unable to agree on an alternative service, then either party may petition any court of competent jurisdiction in the county in which the property is located to appoint such an alternative service, which shall be binding on the parties. the rules and procedures of such alternative service in effect at the time the request for arbitration is submitted shall be followed.

c.      The Buyer and Seller expressly agree and acknowledge that this Purchase Agreement involves and concerns interstate commerce and is governed by the provisions of the Federal Arbitration Act (9 U.S.C. §1 et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance, regulation, or judicial rule. Accordingly, any and all Disputes shall be arbitrated – which arbitration shall be mandatory and binding – pursuant to the Federal Arbitration Act.

. . . .

e.      In the event any Dispute arises under the terms of the Purchase Agreement or in the event of the bringing of any arbitration action by a party hereto against another party hereunder by reason of any breach of any of the covenants, agreements or provisions on the party of the other party arising out of this Purchase Agreement, then all fees and costs shall be borne separately between the parties, including but not limited to all attorneys' fees and expert witness costs resulting from the Dispute. The foregoing provision does not modify any provision of any contract between Seller and any third-party requiring indemnification or establishing a different allocation of fees and costs between Seller and such third party. In the event Buyer is an entity and not a natural person and Seller is the prevailing party the individual signing this Purchase Agreement on behalf of such entity shall also be personally liable for Seller's fees and costs as aforesaid notwithstanding any indication that such individual is signing in a corporate capacity. The provisions of this paragraph shall survive closing or termination of this Purchase Agreement.

f.      The Arbitrator shall be authorized to provide all recognized remedies in law or in equity for any cause of action that is the basis of the arbitration.

. . . .

5

h.  To the extent that any state or local law, ordinance, regulation, or judicial rule is inconsistent with any provision of the rules of arbitration service under which the arbitration proceeding shall be conducted, the latter rules shall govern the conduct of the proceeding.

. . . .

l.  If any provision of this arbitration agreement shall be determined to be unenforceable or to have been waived, the remaining provisions shall be deemed severable therefrom and enforceable according to their terms.[1]

Appellants filed a motion to abate the proceedings and to compel arbitration, seeking "to compel [the Skufcas] to arbitration and, specifically, to submit the determination of the arbitrability of their claims against [Appellants] to arbitration" pursuant to the FAA. Appellants' motion specifically sought to arbitrate "the gateway determination of arbitrability." They asserted that the trial court "must compel [the Skufcas] to arbitration for the determination of any gateway or threshold issues of arbitrability." Appellants stated that the motion was based on subparagraph (a), which contained a delegation provision, delegating to the arbitrator, among other things, the authority to determine threshold issues of arbitrability, including enforceability of the arbitration agreement and defenses to enforcement.

---

[1]  In the original, portions of the arbitration agreement contained in paragraph 11 appeared in all capital letters and boldface, but we have normalized the capitalization and omitted the boldface for readability.

The Skufcas responded to the motion to compel, opposing it. They claimed that the children were not required to arbitrate their claims because they were non-signatories to the arbitration agreement. They alleged that the children's "injuries [were] brought on by negligence and a breach of duty by the Defendants, not from a contract provision that the children are seeking to enforce."

The Skufcas claimed that the arbitration agreement was substantively unconscionable because it deprived them "of any available remedies afforded to them under applicable Texas Law including statutory laws that would likely not be available at arbitration, and as such [was] substantively unconscionable." They also asserted that the delegation provision was "unconscionable as the ability or optics of an unbiased, third-party, compensated, arbitrator, to determine that a case or claims within a case can be arbitrated is circular in its logic and indefensible." They requested that the arbitration agreement be severed from the purchase agreement.

The trial court conducted a hearing on Appellants' motion to compel arbitration. The Skufcas stated that the only issue they were seeking the trial court to determine at the hearing was whether "the minor children's personal injury claims" were subject to the arbitration agreement. They acknowledged that, "[u]nder the terms of the arbitration [agreement], the gateway issues of what should be binding for the parties to the contract are brought up with the arbitrator." The Skufcas stated, "If we have any issues in the arbitration, we're going to raise those with the

arbitrator, hey, we don't believe—we think this is unconscionable or whatever, we have to take that up with the arbitrator on behalf of mom and dad/husband and wife, signatories of the contract."

On November 20, 2019, the trial court signed an order granting the motion to compel arbitration as to Jack and Erin Skufca. The trial court ordered Jack and Erin to participate in arbitration to be conducted by the AAA. The trial court abated its proceedings to permit arbitration to proceed with respect to Erin's and Jack's individual claims.

But, because the children were not signatories to the purchase agreement, the trial court denied the motion to compel as to the children's claims. Taylor Morrison appealed the denial, which we affirmed in *Taylor Morrison of Texas, Inc. v. Skufca as Next Friend of KSX & KSXX*, No. 01-19-00943-CV, 2020 WL 5823287, at \*9 (Tex. App.—Houston [1st Dist.] Oct. 1, 2020, pet. filed) (mem. op.).

In May 2020, the Skufcas filed their "Construction Arbitration Rules Demand for Arbitration" with the AAA. Regarding the amount of their claims, they stated, "The cost of the demolition, remediation and rebuild [of their home] is $720,651.09. The cost of the cleaning and replacement of the contents are $523,761.90. Estimated alternative living expense is $270,000." The sum of the Skufcas' requested damages was $1,514,412.99. They also sought attorney's fees, interest, and arbitration costs.

On July 13, 2020, the Skufcas filed a "Motion to Lift Abatement & Motion to Reconsider Motion to Compel Arbitration Based on New Information." The Skufcas asserted that the arbitration agreement was unconscionable because it made arbitration "prohibitively expensive," denied them "statutory rights and remedies"— such as the right to recover attorney's and expert's fees—and "[took] away the Court's ability to make gateway decisions."

The Skufcas claimed that their attorney had "learned of the exorbitant costs, and other substantive barriers to arbitration associated with conducting arbitrations with the AAA" as required by the arbitration agreement. They asserted that, to arbitrate with the AAA, they were required to pay an initial filing fee totaling $7,000 and then pay an additional $7,700 before the first arbitration hearing, for a total cost of $14,700. They stated that their attorney had paid the fees, but they would be required to reimburse him out of their arbitration award. They offered the AAA's fee schedule to support their assertions.

Subparagraph (f) of the arbitration agreement stated that "the arbitrator shall be authorized to provide all recognized remedies available in law or in equity for any cause of action that is the basis of the arbitration." In their petition, the Skufcas asserted causes of action—including breach of contract, statutory real estate fraud, and violation of the Deceptive Trade Practices Act—for which they could recover attorney's fees if they prevailed. Their pleading also referenced the Residential

Construction Liability Act, which allows recovery of attorney's and expert's fees if a plaintiff pleads and successfully proves a cause of action for which those fees are recoverable.

The Skufcas claimed that they had agreed to go forward with arbitration because they had thought they could recover their attorney's and expert's fees along with arbitration costs based on language in subparagraph (f). They asserted that they had learned that Appellants were "seeking to use" the arbitration agreement "to limit [the Skufcas'] ability to recover under the laws of the state of Texas." They stated that they had discovered that in other suits filed against Appellants by Mar Bella homeowners, Appellants had moved to vacate arbitration awards given to the homeowners, which had included attorney's and expert's fees and arbitration costs. In support of their vacatur motions, Appellants cited language in the arbitration agreement involved in those suits, which was the same as the Skufcas' arbitration agreement. Specifically, Appellants relied on language in subparagraph (e), which provides that "all fees and costs shall be borne separately between the parties," and subparagraph (h), which provides that, "[t]o the extent that any state or local law, ordinance, regulation, or judicial rule is inconsistent with any provision of the rules of the arbitration service under which the arbitration proceeding shall be conducted, the latter rules shall govern the conduct of the proceeding." In the vacatur motions, Appellants pointed out that the AAA's rules permitted the arbitrator to award fees

and costs to a party but only if allowed by the arbitration agreement. Because the arbitration agreement did not allow the award of fees and costs, Appellants had argued in those cases that the arbitrator's award of fees and costs should be vacated. Based on Appellants' conduct in those cases, the Skufcas asserted that Appellants were using the AAA's rules in tandem with the arbitration agreement's provisions in an attempt to deprive the Skufcas of their statutory rights to recover attorney's and expert's fees.

On August 13, 2020, the trial court conducted a hearing on the Skufcas' motions. At the end of the hearing, the trial court stated that it understood part of the Skufcas' argument to be that the arbitration agreement was "unconscionable because it's conflicting." The trial court then ruled in the Skufcas' favor, explaining:

> The contract provides for one thing in one paragraph and denies the same thing in another paragraph. I think it's a confusing contract. I don't know whether it's unconscionable, but it's darn sure confusing. I'm slow to add stuff to contracts. I'm really slow to do that. But I think that that arbitration clause is not enforceable, period. I'm not going to give you another one. I'm just going to tell you I'm going to strike the arbitration clause.

The same day as the hearing, the trial court signed orders lifting the abatement and granting the Skufcas' motion to reconsider Taylor Morrison' motion to compel arbitration. The trial court also signed a third order finding that "portions of the arbitration clause contained in the parties' purchase agreement contains provisions that are vague, ambiguous, misleading, internally inconsistent and in conflict with

11

each other, purports to invalidate or waive substantive rights and remedies authorized by statute and [are] unconscionable." The court also found that "the arbitration provision results in the overall costs of arbitration to be excessive compared to litigation in this Court." The trial court ordered "[t]he arbitration clause . . . stricken from the contract."

Less than one month later, the Skufcas filed a "Motion to Reconsider [and] Motion to Compel." They asked the trial court to reconsider its August 13 order striking the arbitration clause in its entirety. The Skufcas pointed out that subparagraph (l) of the arbitration agreement provided, "If any provision of this arbitration agreement shall be determined to be unenforceable or to have been waived, the remaining provisions shall be deemed severable therefrom and enforceable according to their terms." They cited case law indicating that the proper course of action was to sever the provisions of the arbitration agreement they had previously assailed as rendering the arbitration agreement unenforceable—which by implication included the delegation provision—from the remainder of the arbitration agreement and order the parties to arbitration.[2]

---

[2]     *See In re Poly-America*, *L.P.*, 262 S.W.3d 337, 360 (Tex. 2008) (orig. proceeding) (applying principle that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement" in dispute involving arbitration agreement).

12

Appellants also filed a motion to reconsider and to vacate the August 13 order. Appellants relied on the delegation provision, which required that "[a]ny dispute concerning the interpretation or the enforceability of this arbitration agreement, including . . . any defense relating to the enforcement of this arbitration agreement . . . shall be decided by an arbitrator in accordance with this arbitration agreement and not a court of law." Appellants asserted that the trial court was not the proper forum to determine questions of unconscionability of the agreement's provisions. Rather, the delegation provision "expressly delegated those interpretational issues to determination by arbitration, not by a court of law." Appellants argued that the delegation provision was itself not "substantively unconscionable."

The Skufcas responded, stating that they were withdrawing their July 13 motion to reconsider, which had resulted in the trial court's August 13 order striking the arbitration agreement. Even though they withdrew the earlier motion, the Skufcas' arguments were primarily the same as their arguments in their July 13 motion. Like the July 13 motion, the Skufcas argued that the arbitration agreement was unconscionable "because it seeks to contract away the authority of this Court to decide gateway issues, forces [the Skufcas] to litigate in an inaccessible and prohibitively expensive forum, and attempts to strip [the Skufcas'] statutory rights and remedies." Among their evidence, the Skufcas offered a AAA fee schedule, the

affidavit of their attorney, and the affidavit of an attorney working with their counsel in other suits against Appellants filed by Mar Bella homeowners.

On October 5, 2020, the trial court conducted a hearing on Appellants' motion for reconsideration. Eleven days later—on October 16—the trial court signed an order that, like the August 13 order, found that "the arbitration provision results in the overall costs of arbitration to be excessive compared to litigation in this Court." Also like the earlier order, the trial court found that "portions of the arbitration clause contained in the parties' purchase agreement contains provisions that are vague, ambiguous, misleading, internally inconsistent and in conflict with each other, purport[] to invalidate or waive substantive rights and remedies authorized by statute and [are] unconscionable." The trial court then determined those provisions were "unenforceable and severed" from the arbitration agreement pursuant to subparagraph (l)'s severability provision. In the October 16 order, the trial court struck through the "unenforceable and severed" provisions as follows:

11) Dispute Resolution—Arbitration:

[. . . .]

> (a)    This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any dispute concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, any challenges to the enforcement or the validity of the agreement, or this arbitration agreement, or the scope of arbitrable issues under this arbitration agreement, and any defense relating to the enforcement of this arbitration agreement,

14

including without limitation, waiver, estoppel, or laches, shall be decided by *an arbitrator in accordance with this arbitration agreement and not* a court of law.

b.     *In the event that a dispute arises between the parties, such dispute shall be resolved by and pursuant to the arbitration rules and procedures of American Arbitration Association in effect at the time the request for arbitration is submitted. In the event the American Arbitration Association is for any reason unwilling or unable to serve as the arbitration service, then the parties shall select another reputable arbitration service. If the parties are unable to agree on an alternative service, then either party may petition any court of competent jurisdiction in the county in which the property is located to appoint such an alternative service, which shall be binding on the parties. The rules and procedures of such alternative service in effect at the time the request for arbitration is submitted shall be followed.*

[. . . .]

(e)     *In the event any dispute arises under the terms of the Purchase agreement or in the event of the bringing of any arbitration action by a party hereto against another party hereunder by reason of any breach of any of the covenants, agreements or provisions on the party of the other party arising out of this Purchase agreement, then all fees and costs shall be borne separately between the parties, including but not limited to all attorneys' fees and expert witness costs resulting from the Dispute.* The foregoing provision does not modify any provision of any contract between Seller and any third-party requiring indemnification or establishing a different allocation of fees and costs between Seller and such third party. In the event Buyer is an entity and not a natural person and Seller is the prevailing party the individual signing this Purchase agreement on behalf of such entity shall also be personally liable for Seller's fees and costs as aforesaid notwithstanding any indication that such individual is signing in a corporate capacity. The provisions of

this paragraph shall survive Closing or termination of this Purchase agreement.

[. . . .]

(h) *To the extent that any state or local law, ordinance, regulation, or judicial rule is inconsistent with any provision of the rules of arbitration service under which the arbitration proceeding shall be conducted, the latter rules shall govern the conduct of the proceeding.*

(Italics added to highlight specific language severed by trial court.) In the order, the trial court also selected an arbitrator, ordering the parties "to arbitrate with Alice Oliver Parrott." The trial court later signed a separate order vacating its August 13 order.

Appellants now appeal the October 16 order, raising one issue.

## Jurisdiction

Before turning to the merits of Appellants' challenge, we discuss the threshold issue of jurisdiction. This Court must independently determine whether it has jurisdiction over an appeal, even if no party contests jurisdiction. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) ("[W]e are obligated to review sua sponte issues affecting jurisdiction").

### A. Applicable Legal Principles

#### 1. Interlocutory Jurisdiction

The FAA applies to the arbitration agreement here because the parties expressly agreed to arbitrate under the FAA. *See In re Rubiola*, 334 S.W.3d 220, 223

16

(Tex. 2011). Civil Practice and Remedies Code section 51.016, which authorizes appeals in matters subject to the FAA, provides that a party may appeal an interlocutory order "under the same circumstances that an appeal from a federal district court's order or decision would be permitted" by the FAA. TEX. CIV. PRAC. & REM. CODE § 51.016. Under the FAA, a party may immediately appeal an order denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(B).

The substance and function of the order viewed in the context of the record controls our interlocutory jurisdiction. *See Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992) (noting that "it is the character and function of an order that determine its classification" for determining jurisdiction over interlocutory order); *McReynolds v. Elston*, 222 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that order allowing parties to continue pending arbitration under partnership agreement without expressly denying appellant's request to arbitrate under separate settlement agreement denied appellant's "potential contractual right to arbitration" under settlement agreement and was appealable order). An order which functions to deny a party's motion to compel arbitration when viewed in the context of the record will qualify for interlocutory appeal. *See Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 800 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that order granting Baker Hughes' motion to compel arbitration under one agreement, but denying

17

Schlumberger's motion for arbitration under different agreement, was appealable interlocutory order).

To determine whether the October 16 order functioned to deny Appellants' motion to compel, it is helpful to first understand the legal principles governing how arbitration agreements, in particular delegation provisions, are considered.

### 2. *Arbitration Agreements*

Federal law requires the enforcement of valid agreements to arbitrate. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018). "Section 2 of the FAA states arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (orig. proceeding) (quoting 9 U.S.C. § 2). "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Wegner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Arbitration agreements are on equal footing with other contracts and must be enforced according to their terms. *Id.*

When, as here, an arbitration agreement is contained within another contract, the arbitration agreement is severable from the contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2005) (holding that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the

remainder of the contract"); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Because an arbitration agreement is severable, questions about the validity of the larger contract, in which the arbitration agreement is embedded, are determined by the arbitrator. *See Buckeye Check Cashing*, 546 U.S. at 445–46.

But simply because arbitration agreements are severable "does not mean that they are unassailable." *Rent-A-Ctr.*, 561 U.S. at 71. If a party challenges the validity of arbitration agreement—rather than challenging the validity of the larger contract—then the trial court must consider the challenge to the arbitration agreement before it orders the parties to arbitration. *See id.* Under the FAA, courts presume that parties to an arbitration agreement intend that courts rather than arbitrators decide issues as to the validity, scope, and enforceability of the arbitration agreement. *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631–33 (Tex. 2018) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). However, because parties have the right to contract as they see fit, they may delegate to the arbitrator gateway questions of arbitrability, such as the validity or enforceability of an arbitration agreement. *See Rent-A-Ctr.*, 561 U.S. at 69–70; *RSL Funding*, 569 S.W.3d at 121; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.,* — US —, 139 S. Ct. 524, 527 (2019) ("The [FAA] allows parties to agree by

contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.").

The U.S. Supreme Court has explained that an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr*., 561 U.S. at 70. In other words, "[a] delegation provision is itself a separate and severable arbitration agreement."[3] *Berry Y&V Fabricators, LLC v. Bambace*, 604 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Rent-A-Ctr.*, 561 U.S. at 72). Thus, a delegation provision is severable from the remainder of the arbitration agreement, and a party's challenge to another provision of the contract [i.e., the arbitration agreement], or to the larger contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate, such as a delegation provision. *See Rent-A-Ctr.*, 561 U.S. at 70.

If there is a delegation provision, "the court must then compel arbitration so the arbitrator may decide gateway issues the parties have agreed to arbitrate." *RSL Funding*, 569 S.W.3d at 121. "When faced with [a delegation provision], courts have

---

[3] As one federal circuit court explained, "Think of a delegation provision as a mini-arbitration agreement within a broader arbitration agreement within a broader contract, 'something akin to Russian nesting dolls.'" *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 85 (2010) (Stevens, J., dissenting)).

no discretion but to compel arbitration unless the clause's validity is challenged on legal or public policy grounds." *Id.*; *see Rent-A-Ctr.*, 561 U.S. at 72 (holding that, unless party opposing arbitration challenges delegation provision specifically, courts must treat it as valid and enforce it, leaving any challenge to validity of entire arbitration agreement for arbitrator); *Darling Homes of Tex., LLC v. Khoury*, No. 01-20-00395-CV, 2021 WL 1918772, at *8 (Tex. App.—Houston [1st Dist.] May 13, 2021, no pet.) (mem. op.). ("Because there is a valid agreement to arbitrate that delegates arbitrability to the arbitrator, the trial court should have compelled arbitration and allowed the arbitrator to decide the questions relating to unconscionability of the . . . arbitration agreement."); *Berry Y&V Fabricators*, 604 S.W.3d at 487 (recognizing that when agreement "delegates to the arbitrator questions of validity or enforceability of that agreement, a court may not intervene in evaluating those questions unless the party opposing arbitration challenges the delegation provision specifically on legal or public policy grounds").

### B.  Jurisdictional Analysis

We requested that the parties brief the issue of our interlocutory jurisdiction. In their brief, Appellants contend that the function of the October 16 order was to deny their motion to compel arbitration, which specifically sought to compel arbitration under the delegation provision to determine questions of arbitrability. We agree with Appellants.

21

The trial court originally granted Appellants' motion to compel arbitration as to the Skufca parents. The trial court then, in its August 13 order, struck the entirety of arbitration agreement, effectively denying Appellants' motion to compel. The August 13 order was later vacated.

At the Skufcas' request, the trial court signed the October 16 order, severing the language in the delegation provision that required the arbitrator, not the trial court, to decide gateway issues concerning the arbitration agreement. The trial court also severed the provision requiring arbitration to be conducted by the AAA pursuant to AAA rules and procedures. The court severed two additional provisions governing arbitral procedure, including the assessment of "fees and costs." The trial court further struck the provision governing the process of appointing an alternative arbitrator if the AAA could not serve as the arbitration service. As agreed by the parties, if the AAA could not arbitrate the dispute, then the parties were to select an arbitration service. If the parties could not do so, then a party could petition the court to appoint an arbitrator. After striking the provision regarding the agreed process, the trial court ordered the parties to arbitrate with an arbitrator selected by the court.

In sum, the trial court's October 16 order (1) granted arbitration but did not limit arbitration to questions of arbitrability as requested by Appellants in their motion to compel; (2) severed the operative language of the delegation provision, reserving threshold issues instead for the trial court to decide; (3) eliminated the

22

contemplated and agreed manner and procedure of how arbitration would proceed—that is, eliminated arbitration with the AAA pursuant to AAA rules and procedures, and (4) granted the Skufcas' motion to compel by ordering arbitration of the merits of the Skufcas' claims under the modified agreement to arbitrate with an arbitrator selected by the trial court who had no authority to decide gateway issues of arbitrability.

When viewed in the context of the record, the order served to deny Appellants their contractual right pursuant to the delegation provision to arbitrate threshold issues of arbitrability, including enforceability. Although the trial court ordered the parties to arbitration, the arbitration ordered was effectively not pursuant to the agreement under which Appellants sought to compel arbitration, that is, it was not pursuant to the delegation provision, which, as discussed, constitutes a separate arbitration agreement from the broader arbitration agreement. *See Rent-A-Ctr.*, 561 U.S. at 70. Thus, we conclude that the October 16 order functioned to deny Appellants' motion to compel arbitration. *See Tex. La Fiesta Auto Sales, LLC v. Belk*, 349 S.W.3d 872, 878 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that court had jurisdiction over interlocutory order compelling arbitration under provision in contract that was separate from arbitration provision in contract relied on by appellant in requesting arbitration because "order implicitly denied the requested relief by compelling arbitration under Paragraph 6.04 of the employment

23

contract rather than the arbitration agreement"); *McReynolds*, 222 S.W.3d at 738. We hold that we have jurisdiction over this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.016; 9 U.S.C. § 16(a)(1)(B).

Even if we do not have jurisdiction, mandamus relief remains potentially available to Appellants because mandamus is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal, as when a party is erroneously denied its contracted-for arbitration rights under the FAA"[4] *CMH Homes v. Perez*, 340 S.W.3d 444, 452 (Tex. 2011); *see Tex. La Fiesta Auto Sales*, 349 S.W.3d at 879. For the reasons discussed below, our resolution of the issues would be the same whether determined in an appeal or in in an original proceeding seeking a writ of mandamus.[5]

---

[4]   In its briefing, Taylor Morrison requested that we consider their appellate brief as a petition for mandamus, if necessary. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447–52, 454 (Tex. 2011) (holding court of appeals correctly determined it lacked jurisdiction to hear interlocutory appeal from trial court's order appointing arbitrator, but remanding case back to court of appeals to consider mandamus relief that was alternatively requested).

[5]   A party is entitled to mandamus relief to correct a clear abuse of discretion for which the remedy by appeal is inadequate. *Walker v. Packer*, 827 S.W.2d 833, 839. 842 (Tex. 1992). A trial court abuses its discretion regarding factual issues if it could reasonably have reached only one decision and failed to do so. *Id.* at 840. However, a trial court has no discretion regarding questions of law. *Id.* Thus, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.*

**Motion to Compel Arbitration**

Having determined that we have jurisdiction, we turn to Appellants' challenge to the October 16 order.

## A. Standard of Review

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115. A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

## B. Analysis

In their motion to compel, Appellants sought to enforce the delegation provision, which was an antecedent agreement to arbitrate threshold issues concerning the arbitration agreement, including enforceability and defenses to enforceability like unconscionability. *See Rent-A-Ctr.*, 561 U.S. at 70. The Skufcas' stance was that the arbitration agreement was unconscionable because (1) the

25

delegation provision improperly required the arbitrator to determine gateway issues, like enforceability, rather than the trial court; (2) subparagraph (b) of the agreement required arbitration with the AAA, which the Skufcas asserted was "prohibitively expensive"; and (3) subparagraph (e), which provided that "all fees and costs shall be borne separately between the parties," and subparagraph (h), which provided that, "[t]o the extent that any state or local law, ordinance, regulation, or judicial rule is inconsistent with [the AAA rules], the latter rules shall govern the conduct of the proceeding," operated to deny the Skufcas their statutory rights and remedies, such as their right to recover attorney's fees. The Skufcas also claimed that the arbitration agreement was unconscionable because the agreement did not "advise" them "of the exorbitant filing fees or arbitration costs." On appeal, they amplify this claim by asserting that they were fraudulently induced to sign the purchase agreement and agreement to arbitrate by Appellants' silence regarding the cost of arbitration and the unavailability of statutory remedies under the arbitration agreement.

The Skufcas requested the trial court to review the enforceability of the arbitration agreement and either sever it from the purchase agreement or, pursuant to the arbitration agreement's severability clause, sever the complained-of provisions. The trial court did the latter, severing the offending provisions, including the operative language of the delegation provision. The trial court found in its order

that the severed provisions were, inter alia, unconscionable and that "the overall costs of arbitration [were] excessive compared to litigation in [the trial court]."

As discussed, if, as here, there is a delegation provision, "the court must then compel arbitration so the arbitrator may decide gateway issues the parties have agreed to arbitrate." *RSL Funding*, 569 S.W.3d at 121. "When faced with [a delegation provision], courts have no discretion but to compel arbitration unless the clause's validity is challenged on legal or public policy grounds." *Id.*; *see Rent-A-Ctr.*, 561 U.S. at 72; *Darling Homes of Tex.*, 2021 WL 1918772, at *8; *Berry Y&V Fabricators*, 604 S.W.3d at 487.

Appellants assert that, under these principles, the trial court had no discretion to sever the delegation provision's operative language and concomitantly decide questions of enforceability, a decision the parties had expressly given to the arbitrator. They contend that the trial court abused its discretion in effectively denying their motion to compel arbitration of gateway issues pursuant to the delegation provision.

Appellants acknowledge that the Skufcas specifically challenged the delegation provision as being unconscionable, an issue the trial court was permitted to decide. *See RSL Funding*, 569 S.W.3d at 121. But they contend that the Skufcas failed to show that the delegation provision was unconscionable.

27

Whether relating to arbitration or not, unconscionable contracts are unenforceable. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). "[T]he theory behind unconscionability in contract law is that courts should not enforce a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." *Olshan Found. Repair*, 328 S.W.3d at 892. "Generally, a contract is unconscionable if, given the parties general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Id.* (internal quotations marks omitted)).

Arbitration agreements may be either substantively or procedurally unconscionable, or both. *See In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding). Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision. *In re Palm Harbor Homes*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding). Because an arbitration agreement functions as a forum-selection clause, *see Poly-America*, 262 S.W.3d at 352, the "'crucial inquiry' in determining unconscionability [is] 'whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights.'" *Venture Cotton*

28

*Co-op. v. Freeman*, 435 S.W.3d 222, 231 (Tex. 2014) (quoting *Olshan Found. Repair*, 328 S.W.3d at 894). As the party asserting the defense, the Skufcas had the burden to prove the delegation provision was unconscionable. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015).

The Skufcas first raised the issue of the delegation provision's unconscionability in their response to the motion to compel. They asserted that the delegation provision was "unconscionable as the ability or optics of an unbiased, third-party, compensated, arbitrator, to determine that a case or claims within a case can be arbitrated is circular in its logic and indefensible." In their response to Appellants' motion for reconsideration of the August 13 order, the Skufcas further challenged the delegation provision:

> Despite statutory and judicial authority for the proposition that Courts decide gateway matters such as the validity and enforceability of arbitration clauses, [Appellants have] written into [their] contracts a provision which attempts to take that authority away. This is an example of the substantive unconscionability of the contract's arbitration clause.

The Skufcas claimed that "[u]nder the FAA, absent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as whether a valid arbitration agreement exists." However, as discussed, both the U.S. Supreme Court and the Supreme Court of Texas have recognized the validity of delegation provisions.

29

In *Rent-A-Center*, the Supreme Court explained, "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." 561 U.S. at 68–69.

More recently, in *Henry Schein*, the Supreme Court reiterated, "Under the [FAA] and this Court's cases, the question of who decides arbitrability is itself a question of contract. The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." 139 S. Ct. at 527. In *Henry Schein*, the party opposing arbitration argued, as the Skufcas do here, "that a court must always resolve questions of arbitrability and that an arbitrator never may do so." *Id.* at 530. To that argument, the Supreme Court responded, "But that ship has sailed. This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."[6] *Id.* And "[w]hen the parties' contract delegates the arbitrability question

---

[6] As mentioned, the delegation provision provides that "[a]ny dispute concerning the interpretation or the enforceability of this arbitration agreement, including without limitation . . . any defense relating to the enforcement of this arbitration agreement . . . shall be decided by an arbitrator in accordance with this arbitration agreement and not a court of law." The Skufcas did not dispute in the trial court nor do they dispute on appeal that the delegation provision is clear and unmistakable evidence that the parties agreed that threshold issues were delegated to the arbitrator. To the

to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* at 531.

The Supreme Court of Texas in *RSL Funding* also recognized that parties may agree to delegate questions of arbitrability to the arbitrator: "But as parties have a right to contract as they see fit, they may agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator." 569 S.W.3d at 121 (citing *Rent-A-Ctr.*, 561 U.S. at 68–70). There, the supreme court held that the court of appeals had erred by refusing to send an issue of arbitrability to the arbitrator when the parties' arbitration agreement contained a delegation provision. *Id.* at 123.

In short, both the U.S. Supreme Court and the Supreme Court of Texas have made clear that parties may contract to delegate questions of arbitrability to the arbitrator. Thus, the Skufcas failed to show that the delegation provision was unconscionable because it delegated the authority to decide the arbitration agreement's validity and enforceability to the arbitrator.

The Skufcas' arguments in the trial court can also be fairly interpreted to challenge the delegation provision as being unconscionable based on the cost of arbitration. They asserted that the cost of arbitrating their claims with the AAA was "prohibitively expensive" as compared to litigating their claims in the trial court or

---

contrary, by arguing that the delegation provision is unconscionable because it delegates the right to decide threshold issues to the arbitrator, they implicitly acknowledge that it is clear and unmistakable in that function.

utilizing an alternative arbitration service. The Skufcas tied this assertion specifically to the delegation provision:

> [A] Plaintiff can be forced to sign th[e] arbitration clause in order to purchase [a] home, then if there is a dispute, should bypass [the trial court]," despite clear statutory requirement for [the court] to determine unconscionability, immediately file for arbitration with the AAA and pay $14,700.00 to have an arbitrator determine whether or not the fee to use the AAA is unconscionable, only then to have to split the costs of the arbitrator and never have the ability to recoup those costs[.]

(Footnote omitted.) In other words, the Skufcas complained that they should not be required to pay what they termed "exorbitant costs" to arbitrate threshold issues of enforceability under the delegation provision.

Excessive arbitration costs may render contractual arbitration unenforceable if the costs prevent a litigant from effectively vindicating his or her rights in the arbitral forum. *Olshan Found. Repair*, 328 S.W.3d at 893. A party opposing arbitration based on the defense of unconscionability must supply "specific proof in the particular case of the arbitral forum's inadequacy." *Venture Cotton Co-op.*, 435 S.W.3d at 232. When a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). The complaining party must present "*some evidence* that [it] will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." *Poly–Am.*, 262 S.W.3d at 356.

32

To determine whether the arbitral forum is an adequate and accessible substitute to litigation, courts consider the following factors: (1) the claimant's ability to pay the arbitration fees and costs, (2) the actual cost of arbitration compared to the amount of damages, and (3) the expected cost differential between arbitration and litigation in court and whether that cost differential is so substantial as to deter the bringing of claims. *Olshan Found. Repair*, 328 S.W.3d at 893–95. "[A] comparison of the total costs of the two forums is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation." *Id.* at 894–95.

Speculation about possible harm is insufficient to establish unconscionability. *Venture Cotton Co-op.*, 435 S.W.3d at 232. Rather, the party opposing arbitration must offer evidence such as invoices, expert testimony, reliable cost estimates, and affidavits to prove the likelihood of incurring expected costs. *Olshan Found. Repair*, 328 S.W.3d at 895.

The Skufcas supported their assertion that arbitration was prohibitively expensive by offering the AAA's "Construction Industry Arbitration Rules and Mediation Procedures," which included the fee schedule for filing arbitration. The schedule showed that, for claims over $1 million, such as the Skufcas' claims, the initial filing fee was $7,000 and the final fee was $7,700, totaling $14,700. The Skufcas also offered the affidavits of their attorney, Craig Eiland, and Dax Faubus,

Eiland's co-counsel in other suits filed against Appellants on behalf homeowners in the Mar Bella subdivision. They each testified about two of these suits in which arbitration with Appellants had already been completed. Arbitration in those suits had resolved the merits of the plaintiffs' claims, resulting in arbitration awards to the plaintiffs for damages, attorney's fees, and expert's fees. In their affidavits, Eiland and Faubus testified about the cost of arbitrating those other suits as a basis to argue that arbitrating the merits of the Skufcas' claims would be prohibitively expensive.

At this point, we turn to an argument raised by Appellants relating to the cost of arbitration. In the trial court, Appellants countered the Skufcas' assertion that they would be required to pay $14,700 in filing fees by pointing out that the relief requested in Appellants' motion to compel had been limited to seeking arbitration under the delegation provision of threshold issues of arbitrability. Appellants emphasized that they did not seek arbitration of the merits of the Skufcas' claims under the provisions of the arbitration agreement. Because they requested arbitration of only threshold issues, Appellants asserted that the filing fees of $14,700 for claims over $1 million would not apply to arbitration limited to deciding only questions of arbitrability under the delegation provision. Appellants offered the fee schedule for "Non-Monetary, Undetermined, or Specific Performance Claims" contained in the AAA's "Home Construction Industry Arbitration Rules and Mediation Procedures." Appellants asserted that was the applicable fee schedule for arbitrating threshold

arbitrability issues. Under that schedule, Appellants pointed out that the Skufcas'

filing fees would total only $2,300 because arbitrating arbitrability would involve

arbitrating a non-monetary claim.

It is unclear which fee—$2,300 or $14,700—would be required by the AAA

to arbitrate only threshold issues of arbitrability. However, regardless of which fee

applies, Appellants' position that the relevant consideration at this juncture is the

cost of arbitrating arbitrability and enforceability pursuant to the delegation

provision and not the cost of arbitrating the merits of the Skufcas' claims finds

support in the Supreme Court's opinion in *Rent-A-Center*. There, Rent-A-Center

sought to enforce an arbitration agreement against its former employee, Jackson,

who had sued Rent-A-Center for employment discrimination. 561 U.S. at 65.

Jackson opposed arbitration, asserting that the arbitration agreement was

unenforceable because it was unconscionable. *Id.* at 66. "Rent-A-Center responded

that Jackson's unconscionability claim was not properly before the court because

Jackson had expressly agreed that the arbitrator would have exclusive authority to

resolve any dispute about the enforceability of the Agreement." *Id.*

The Supreme Court ultimately ruled in favor of Rent-A-Center because

Jackson had challenged the entire arbitration agreement as being unconscionable but

had not specifically challenged the delegation provision as unconscionable. *Id.* at

73–74. Jackson asserted that the arbitration agreement was substantively

unconscionable because it limited discovery and required the parties to split the arbitration fees. *Id.* at 74. The Supreme Court explained what Jackson would have needed to have shown in order to have established that the delegation provision was rendered unconscionable based on "common procedures":

> To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination.

*Id.* Applying the Supreme Court's reasoning here, to show that the cost of arbitration rendered the delegation provision unconscionable, the Skufcas needed to demonstrate the unfairness of the cost of arbitrating the threshold issues of arbitrability and enforceability under the delegation provision, not the cost of arbitrating the merits of their claims to an award under the arbitration agreement. *See id.*

We further note that the Skufcas presented no evidence of their ability to pay the costs of arbitration. In their response to Appellants' motion to reconsider, the Skufcas stated that they had "set forth in their [sic] affidavit their surprise of the excessive filing fees and cost of arbitration and the unnecessary burden or hardship

it will cost." They represented that the affidavit was offered in support of the response, but no affidavit appears in the record.

Here, in challenging the delegation provision, the Skufcas offered evidence regarding the costs of conducting the entire arbitration of their merits-based claims under the arbitration agreement. They did not offer evidence showing the cost of arbitrating only threshold issues under the delegation provision. And they offered no evidence of their ability to pay. Thus, we conclude that the Skufcas did not meet their burden to show that the cost of arbitrating threshold issues rendered the delegation provision substantively unconscionable. *See id.*; *Darling Homes of Tex.*, 2021 WL 1918772, at *10 (holding that homeowner opposing arbitration did not show arbitration agreement was substantively unconscionable due to excessive arbitration costs where homeowner offered evidence of amount of arbitral filling fee but failed to offer evidence of "total costs" of arbitration (or litigation) and record contained no evidence "about the individual homeowners' ability to pay the arbitration fees and costs"); *see also Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:09-cv-0033-OWW-MJS, 2010 WL 5343299, at *7 (E.D. Cal. Dec. 20, 2010) (rejecting plaintiff's claim that fee-splitting provision in arbitration agreement rendered delegation provision unconscionable because plaintiff offered only evidence that "the total cost of conducting the *entire arbitration*, including resolution of the substantive merits of the parties' disputes, could exceed $60,000.00," but

"[n]othing in the record reveal[ed] the cost of arbitrating Plaintiff's claim of unconscionability").

The record also provides an additional basis to conclude that the cost of arbitrating threshold issues failed to render the delegation provision substantively unconscionable. In its motion to reconsider, Appellants offered to pay the Skufcas' arbitration costs for arbitrating threshold issues. Appellants represented to the trial court that it would "pay the AAA the $2,300.00 *and additional amount[s], if necessary*, charged to [the Skufcas] . . . for an arbitrator's determination of arbitrability of [the Skufcas'] claims." (Emphasis added.)

When the party seeking arbitration offers in court to pay the arbitration costs of the party opposing arbitration, both Texas state courts and federal courts have held that the offer moots the opposing party's argument that the arbitration provision is substantively unconscionable because of prohibitive arbitration costs. *See Ensign Grp., Inc. v. Mammen,* No. 02-14-00317-CV, 2015 WL 2266406, at *3 (Tex. App.—Fort Worth May 14, 2015, no pet.) (mem. op.) (rejecting plaintiff's claim that arbitration agreement's cost-splitting provision was substantively unconscionable, in part, because in trial court defendants offered to pay fees if plaintiff could not afford them) (mem. op.); *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 870 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("We reject Brooks' substantive unconscionability argument as moot because D.R. Horton has agreed to pay all costs

38

associated with the arbitration of their dispute."); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004) (acknowledging that law recognizes that prohibitive costs may preclude a party from vindicating rights at arbitration but determining that court need not reach question on whether fee-splitting provision was unconscionable because issue was mooted by defendant's representation to district court that it would pay all arbitration costs); *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1026 (11th Cir. 2003) ("[A]ny problem involving whether the plaintiff can afford the cost of arbitration is no problem in light of the defendant's stipulation to pay the plaintiff's costs of arbitration . . . ."); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (holding defendants' agreement to pay all costs associated with arbitration "foreclose[d] the possibility that the [plaintiffs] could endure any prohibitive costs in the arbitration process").

Because the Skufcas did not successfully challenge the delegation provision, the trial court improperly severed the language in the provision authorizing the arbitrator to decide threshold issues. Without a proper severance of the delegation language, the trial court was not permitted to decide whether the other provisions complained of by the Skufcas rendered the arbitration agreement unenforceable, requiring the provisions to be severed. *See Rent-A-Ctr.*, 561 U.S. at 72; *RSL Funding*, 569 S.W.3d at 121.

Similarly, the trial court had no discretion to determine whether the purchase agreement or arbitration agreement was procedurally unconscionable on the basis that the Skufcas had been fraudulently induced to sign them. Instead, the trial court had no discretion but to compel arbitration as requested by Appellants to permit the arbitrator to decide gateway issues of arbitrability, including enforceability and defenses to enforceability such as substantive and procedural unconscionability. *See RSL Funding*, 569 S.W.3d at 121; *Darling Homes of Tex.*, 2021 WL 1918772, at *4 (holding that, because arbitration agreement delegated "questions of enforceability and defenses to enforceability to the arbitrator," homeowners' substantive unconscionability arguments, which included argument that arbitration agreement was substantively unconscionable because of cost of arbitration, could not justify trial court's denial of arbitration request).

## Conclusion

Because the parties' arbitration agreement contained an enforceable delegation provision, we hold that the trial court abused its discretion by effectively denying Appellants' motion to compel arbitration of threshold issues of arbitrability pursuant to that provision, and we sustain Appellants' sole issue.[7] Accordingly, we

---

[7] We need not address other arguments raised by Appellants challenging the October 16 order. *See* TEX. R. APP. P. 47.1. We also note that, in their brief, Appellants request that we decide whether Taylor Morrison—which the record indicates has an ownership interest in Taylor Woodrow—may enforce the arbitration agreement along with Taylor Woodrow, even though Taylor Morrison is a non-signatory to the

reverse the trial court's October 16 order and remand to the trial court for the court to sign an order compelling the parties to arbitrate pursuant to the delegation clause and staying the proceedings.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Farris.

---

agreement. However, the record does not reflect that the Skufcas disputed Taylor Woodrow's ability to enforce the agreement in the trial court nor that the trial ruled on this issue. Therefore, we do not address it. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 147 (Tex. 2012) (recognizing that courts lack jurisdiction to render advisory opinions).