

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00355-CV

**SSC WIMBERLEY OPERATING COMPANY, LLC**;
Randall Morris; Bozena Mrozek; Calvin Boutte; SavaSeniorCare Administrative and Consulting,
LLC; and SSC Equity Holdings MT, LLC,
Appellants

v.

Shellie **GOODMAN**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CI17165
Honorable Norma Gonzales, Judge Presiding

Opinion by:      Patricia O. Alvarez, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: January 11, 2023

REVERSED AND REMANDED

In the dispute underlying this appeal, an employer moved to compel arbitration of its
former employee's retaliation claim. The former employee argued the employer failed to prove a
valid arbitration agreement exists, or if it did, the agreement is unenforceable because none of the
defendants signed it and it is substantively unconscionable. The trial court denied the employer's
motion, and the employer appeals.

We conclude the employer established the existence of a valid, enforceable arbitration agreement and the former employee's claim is within the scope of the agreement. Therefore, we reverse the trial court's order, order arbitration of the former employee's claim, and remand this cause to the trial court for further proceedings consistent with this opinion, including the trial court's grant of an appropriate stay.

## BACKGROUND

Appellant SSC Wimberley Operating Company, LLC d/b/a Deer Creek of Wimberley (Deer Creek) operates an assisted living facility that provides in-patient nursing and rehabilitation care. Appellant SavaSeniorCare Administrative and Consulting LLC (SSC) provides support services to Deer Creek including employee handbooks and arbitration agreements.

### A. Employment Application, Offer

In 2013, Appellee Shellie Goodman applied to work at the Deer Creek facility. She was interviewed by Bozena Mrozek, the Deer Creek Rehabilitation Manager, at the Deer Creek facility.

As part of the employment application process, on February 20, 2013, Goodman signed a copy of the Employment Dispute Resolution Program Agreement. The Agreement provides in part that "both the Company and I agree to resolve all claims, controversies or disputes relating to my application for employment, my employment and/or termination of employment with the Company exclusively through the Company's Employment Dispute Resolution Program."

A few days later, on February 23, 2013, SSC offered Goodman "the PRN position of Occupational Therapist Assistant for Sava Senior Care Deer Creek of Wimberley." The offer letter states Goodman is "qualified to provide services at any of our Sava Senior Care facilities."

### B. Offer Accepted, Acknowledgment Signed

Goodman accepted the offer, and on March 22, 2013, she signed a form titled "Employment Dispute Resolution Program Acknowledgment." By signing the form, Goodman

acknowledged "that I have received my copy of the Employee Dispute Resolution (EDR) Program booklet . . . [and it] is my responsibility to familiarize myself with its contents."[1] The booklet introduction states that "[y]our decision to accept employment or to continue employment with the Company constitutes your agreement to be bound by the EDR Program." The acknowledgment form notes that the employment relationship could be terminated at any time by the employee or the Company. Goodman signed the acknowledgment; in the blank for "Name of Facility," she wrote "Deercreek of Wimberley."

## C.    Employment at Deer Creek

Goodman started work at Deer Creek in March 2013. Shortly after she was hired for the PRN position, Goodman was hired to a full-time position, and she worked at Deer Creek for eight years. She provided all her therapy services at the Deer Creek facility.

On Saturday, July 3, 2021, Goodman agreed to work an additional shift. Goodman asserted that on that day, according to applicable government regulations, there were not enough certified nursing assistants on the shift to care for the patients. She alleged that the patients were suffering from "extreme patient neglect."

On Monday, July 5, 2021, she reported the conditions to the Texas Health and Human Services Commission (HHSC), and HHSC representatives investigated the same day. Nine days later, Deer Creek terminated Goodman's employment.

---

[1] The Employment Dispute Resolution Book invokes the FAA: "The application, interpretation and enforcement of the EDR Program is covered by the Federal Arbitration Act."

**D.** **Lawsuit**

Goodman sued Deer Creek, SSC, Mrozek, and others[2] for retaliation under section 260A of the Texas Health and Safety Code. Her suit alleges she was terminated for reporting patient neglect to her supervisor and HHSC. *See* TEX. HEALTH & SAFETY CODE ANN. § 260A.014 (prohibiting retaliation against employees).

The defendants moved the trial court to stay all proceedings and order Goodman to arbitrate her claims in accordance with the EDR Program.

After a hearing, the trial court denied the defendants' motion, and the defendants appeal.

PARTIES' ARGUMENTS

**A.** **Appellants' Arguments**

On appeal, Appellants argue that the trial court erred by denying their motion to compel arbitration. They contend that Goodman received notice of the EDR Program Agreement; the agreement is a valid, enforceable arbitration agreement; and after she received notice, she continued to work at Deer Creek, and thus she was bound to the arbitration agreement's terms.

**B.** **Goodman's Arguments**

Goodman does not deny that she received the EDR Program Agreement, but she contends it is not valid because it does not identify "the Company," and thus the agreement fails for indefiniteness. In the alternative, she argues that even if the agreement was valid, none of the appellants signed it, and thus none can enforce it against her. Finally, she argues in the alternative that the arbitration agreement is unenforceable because the EDR Program's confidentiality agreement is substantively unconscionable.

---

[2] The defendants below are SSC Wimberley Operating Company, LLC, d/b/a Deer Creek of Wimberley (Deer Creek); Randall Morris; Bozena Mrozek; Calvin Boutte; SavaSeniorCare Administrative and Consulting, LLC (SSC); and SSC Equity Holdings Mt., LLC. All the defendants are appellants.

We begin by reciting the applicable standards of review.

## STANDARDS OF REVIEW

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding)). "Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv.*, 279 S.W.3d at 643; *accord Henry*, 551 S.W.3d at 115.

Legal determinations include whether a valid arbitration agreement exists, whether the disputed claims are within the scope of the agreement, and whether the agreement is enforceable. *Henry*, 551 S.W.3d at 115 (existence, validity, scope); *In re Labatt Food Serv.*, 279 S.W.3d at 643 (enforceability); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (existence, validity, scope).

"A trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion." *In re Whataburger Rests.*, 645 S.W.3d 188, 194 (Tex. 2022) (orig. proceeding) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding) (per curiam)).

## VALID ARBITRATION AGREEMENT

The first question we must address is whether Appellants established the existence of a valid arbitration agreement.

### A. Applicable Law

"A party seeking to compel arbitration [under the FAA] must [first] establish the existence of a valid arbitration agreement . . . ." *Henry*, 551 S.W.3d at 115; *accord In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding).

"Arbitration agreements are interpreted under traditional contract principles." *In re Whataburger Rests.*, 645 S.W.3d at 194 (quoting *J.M. Davidson, Inc.*, 128 S.W.3d at 227).

"In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *accord Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We "interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). We construe the words "in the context in which they are used [including] 'the circumstances present when the contract was entered.'" *Id.* (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

We consider surrounding circumstances subject to the parol evidence rule. *Id.* (quoting *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011)). But the rule does not "prohibit courts from considering extrinsic evidence of the facts and circumstances surrounding the contract's execution as 'an aid in the construction of the contract's language.'" *Id.* at 765 (quoting *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)); *accord Hous. Expl. Co.*, 352 S.W.3d at 469.

## B.    Existence of a Valid Arbitration Agreement

Appellants' initial burden was to establish the existence of a valid arbitration agreement between themselves and Goodman. *See Henry*, 551 S.W.3d at 115; *In re Rubiola*, 334 S.W.3d at 223. Goodman argues that Appellants did not establish the existence of a valid arbitration agreement because the agreement is between her and "the Company," and the agreement does not define the Company. Appellants proffered, and the trial court admitted without objection, the following documents: (1) the Employment Dispute Resolution Program Agreement; (2) the

Employment Dispute Resolution Program Acknowledgment; (3) the Employment Dispute Resolution Book; and (4) the SSC offer letter dated February 25, 2013.

### 1. Documents Identify the Company as Goodman's Employer

The EDR documents make it clear that "the Company" is the employee's employer. For example, the EDR Program Agreement, which Goodman signed, states that "I recognize that differences may arise between the Company and me during my application process or employment with the Company." It adds that "the Company and I agree to resolve all claims or disputes relating to my application for employment, my employment and/or termination of employment with the Company exclusively through the Company's Employment Dispute Resolution Program."

### 2. Goodman's Employer was Deer Creek of Wimberley

Other documents also make it clear that Goodman's employer was Deer Creek.

For example, in SSC's offer letter to Goodman, it offered her the position of "Occupational Therapist Assistant for Sava Senior Care Deer Creek of Wimberley." The EDR Program Acknowledgment is signed by Goodman, and she handwrote the "Name of Facility" as "Deercreek of Wimberley."

Further, in her second amended petition, Goodman states that she began work at Deer Creek on March 14, 2013, and she worked there for eight years. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 354 (Tex. 2008) (quoting *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992)) (recognizing that a trial court may decide a motion to compel arbitration on, inter alia, the parties' pleadings).

Having construed the documents, we conclude they conclusively establish the existence of a valid arbitration agreement between Deer Creek and Goodman. Nevertheless, we may also consider the surrounding circumstances. *See URI*, 543 S.W.3d at 764–65.

*3.     Surrounding Circumstances*

When Goodman was applying for the position, Mrozek interviewed her at the Deer Creek facility.  On or before February 20, 2013, Goodman submitted her application.  Her application included a copy of the EDR Program Agreement, which she signed.

She started work at Deer Creek on March 14, 2013, and she reported to Bozena Mrozek, the Rehabilitation Program Manager for Deer Creek.  After Goodman started work at Deer Creek, on March 22, 2013, she signed the EDR Program Acknowledgment on which she handwrote the place she worked as Deer Creek.

If Goodman was uncertain who "the Company" was when she signed the EDR Program Agreement on February 20, 2013, then the EDR Program Acknowledgment she signed on March 22, 2013, her Deer Creek manager, and her place of employment at Deer Creek should have made that clear.  *See id.*; *cf. In re Macy's Tex., Inc.*, 291 S.W.3d 418, 420 (Tex. 2009) (orig. proceeding) (per curiam) (noting that, in a case with analogous facts, "[as the plaintiff] agreed to arbitrate with her employer and purported to sue her employer, she cannot avoid arbitration by raising factual disputes about her employer's correct legal name").

*4.     Valid Arbitration Agreement*

To the degree any surrounding circumstances were needed to determine the parties' intent as expressed in the arbitration agreement documents regarding the identity of the Company, the surrounding circumstances confirm that the Company was Goodman's employer: Deer Creek.

**CLAIM IN SCOPE OF AGREEMENT**

The next question we must address is whether Appellants proved that Goodman's claim is within the scope of the arbitration agreement.

**A.    Applicable Law**

"A party seeking to compel arbitration [under the FAA] must [also] establish . . . that the claims at issue fall within the scope of that agreement." *Henry*, 551 S.W.3d at 115; *accord In re Rubiola*, 334 S.W.3d at 223.

We determine whether a claim falls within the scope of an arbitration agreement by examining the facts alleged in the plaintiff's petition and the terms of the arbitration agreement. *Amateur Athletic Union of the United States, Inc. v. Bray*, 499 S.W.3d 96, 102 (Tex. App.—San Antonio 2016, no pet.) (citing *In re Rubiola*, 334 S.W.3d at 225). If the arbitration agreement includes the type of claim or challenge the alleged facts raise, the issue is within the agreement's scope. *See In re Rubiola*, 334 S.W.3d at 224–25; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754–55 (Tex. 2001) (orig. proceeding).

**B.    Claim Within Scope**

Here, the Employment Dispute Resolution Program Agreement states the following:

> [T]he Company and I agree to resolve all claims, controversies or disputes relating to my application for employment, my employment and/or termination of employment with the Company exclusively through the Company's Employment Dispute Resolution Program. By way of example only, such claims include claims under federal, state and local statutory, regulatory or common law, such as . . . claims for wrongful discharge . . . and claims under the law of contracts and the law [of] torts.

This language's scope is quite broad. *Cf. In re FirstMerit Bank*, 52 S.W.3d at 754–55 (similar language); *Schmidt Land Servs., Inc. v. UniFirst Corp.*, 432 S.W.3d 470, 473–74 (Tex. App.—San Antonio 2014, pet. denied) (same).

We conclude that Goodman's retaliation claim is a claim, controversy, or dispute that relates to her employment and the termination of her employment with Deer Creek: It is within the scope of the arbitration agreement. *See In re FirstMerit Bank*, 52 S.W.3d at 754–55; *Schmidt Land Servs.*, 432 S.W.3d at 473–74.

## C. Valid Agreement with Claim in Scope

Appellants met their burden to prove "the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *See Henry*, 551 S.W.3d at 115.

We turn now to Goodman's defenses against arbitration.

### GOODMAN'S DEFENSES

To avoid arbitration, Goodman challenges the existence of a valid arbitration agreement. She argues in the alternative that (1) none of the appellants can enforce the agreement against her because they did not sign it and (2) the agreement, even if putatively valid, is unenforceable because the EDR Program Book's confidentiality clause is substantively unconscionable.

Goodman correctly recognizes that "parties asserting defenses to arbitration clauses have the burden to prove the defenses—including unconscionability." *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015) (citing *In re Poly-Am.*, 262 S.W.3d at 348).

## A. Agreement Validity, Scope

We have already determined as a matter of law that there is a valid arbitration agreement between Deer Creek and Goodman, and Goodman's claim is within the agreement's scope.

We turn now to the agreement's enforceability.

## B. Nonsignatories Complaint

Goodman argues that the agreement, even if valid, was not signed by any of the appellants, and thus none can enforce it against her. She also insists that even if it could be enforceable by one of the appellants, the agreement cannot be enforced by any other appellant because none is a signatory or third-party beneficiary.

*1.      Signatures Not Required*

The arbitration agreement expressly invokes the FAA, and the FAA does not require arbitration agreements to be signed to be enforceable. *In re Macy's Tex., Inc.*, 291 S.W.3d at 419; *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding) (per curiam). Goodman's argument that the agreement is unenforceable against her for lack of signatures lacks merit. *See In re Macy's Tex., Inc.*, 291 S.W.3d at 419; *In re AdvancePCS Health L.P.*, 172 S.W.3d at 606.

*2.      Enforceable by Other Company, Individual Appellants*

Goodman also argues that even if one appellant could enforce the agreement against her, "a contract with one corporation—including a contract to arbitrate disputes—is generally not a contract with any other corporate affiliates." *See In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) (orig. proceeding).

But Goodman's cited principle is not applicable in this case, and the facts and the applicable law do not support her argument.

In her live pleading, Goodman identifies Deer Creek, SSC, SavaSeniorCare LLC, and SSC Equity Holdings MT, LLC "as a single integrated enterprise and together constitute Plaintiff's former employer," and she sues them for retaliation. She identifies the individual defendants (appellants) as employees or former employees of the company appellants, and she sues the individuals for their actions in their roles as employees of the company appellants.

To summarize, Goodman is suing the company and individual appellants for their respective roles in allegedly retaliating against her by terminating her employment. *See* TEX. HEALTH & SAFETY CODE ANN. § 260A.014 (prohibiting retaliation against employees).

"But when an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was

pulling the strings." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007) (orig. proceeding) (per curiam). "When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement." *In re Merrill Lynch Tr. Co. FSB*, 123 S.W.3d 549, 556 (Tex. App.—San Antonio 2003, orig. proceeding) (quoting *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App.—Dallas 2001, orig. proceeding)), *subsequent mandamus proceeding*, 235 S.W.3d 217 (Tex. 2007).

Here, the arbitration agreement is valid, and Goodman's retaliation claim is within its scope. Thus, the arbitration agreement applies to Goodman's claim against the company and the individual appellants. *See In re Kaplan Higher Educ. Corp.*, 235 S.W.3d at 210; *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 462 (Tex. App.—Dallas 2011, no pet.) ("When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement."); *In re Merrill Lynch Tr. Co. FSB*, 123 S.W.3d at 556 ("The scope of an arbitration agreement may be extended to claims against agents of the principal when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable.").

### 3. Third-Party Beneficiaries

Goodman also argues that even if the arbitration agreement is enforceable by any one entity, no other can enforce it because none is a third-party beneficiary.

Because all the appellants are either alleged employers or agents of the alleged employers, we need not address Goodman's third-party beneficiary argument. *See* TEX. R. APP. P. 47.1.

**C.      Unenforceable Due to Unconscionability**

In her last defense, Goodman argues the arbitration agreement is unenforceable because it is substantively unconscionable due to its confidentiality provision.    She contends the confidentiality provision violates her free-speech rights under the United States and Texas constitutions, and citing *McKee*, she contends the provision violates the "strong policy that justice should be administered openly and publicly."  *See McKee v. AT & T Corp.*, 191 P.3d 845, 858 (Wa. 2008), *abrogated on other grounds by AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

The confidentiality provision Goodman complains of reads as follows:

> All proceedings and all documents prepared in connection with any of the EDR Program steps are confidential.    Unless required by law, no EDR Program proceedings or documents shall be disclosed to any person other than to the participants in those proceedings, representing counsel, witnesses, the mediator, the arbitrator, and, if applicable, the court and its staff.

We briefly recite the applicable law.

*1.      Applicable Law*

"An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate [her] statutory rights.'" *In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008) (orig. proceeding).

"The party opposing arbitration bears the burden to show that [some inadequacy or consequence of the agreement] render[s] [arbitration] unconscionable."  *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010) (orig. proceeding); *see Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014).

In determining unconscionability, "the crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *In re Olshan Found. Repair Co.*, 328 S.W.3d at 894.

### 2. Inadequate Proof of Unconscionability

To begin, Goodman relies on *McKee*, but its pronouncement of a "strong policy that justice should be administered openly and publicly" is based on Washington's state constitution, *see* WASH. CONST. art. I, § 10, which constitution has no applicability in Texas. Goodman cites no Texas authorities to show how the confidentiality provision prevents her from effectively vindicating her statutory rights against a retaliation claim. *See* TEX. HEALTH & SAFETY CODE ANN. § 260A.014 (retaliation statute); *In re Poly-Am., L.P.*, 262 S.W.3d at 349 (addressing vindicating statutory rights). Nor does she show how the confidentiality provision makes the arbitral forum an inadequate or inaccessible substitute. *See In re Olshan Found. Repair Co.*, 328 S.W.3d at 894 (test for unconscionability).

Further, construing Goodman's brief liberally, we note it at most only speculates as to how she might be harmed, and that is not enough. *See Venture Cotton Co-op.*, 435 S.W.3d at 232 (noting that unconscionability "is not satisfied by speculation but by specific proof in the particular case of the arbitral forum's inadequacy").

Goodman failed to meet her burden to show how the confidentiality provision makes the arbitration agreement substantively unconscionable. *See id.*; *In re Olshan Found. Repair Co.*, 328 S.W.3d at 893.

### CONCLUSION

Goodman challenged the existence of a valid arbitration agreement, but the evidence conclusively establishes its existence, validity, and enforceability, and her claim is within the scope of the agreement. We conclude the trial court abused its discretion by denying Deer Creek's

motion to compel arbitration. Accordingly, we reverse the trial court's May 25, 2022 order denying Appellants' motion to abate and compel arbitration. We remand the cause to the trial court for it to render an order (1) compelling arbitration of Goodman's retaliation claim and (2) staying all litigation of Goodman's retaliation claim against all defendants pending resolution of the arbitration.[3]

Patricia O. Alvarez, Justice

---

[3] "Both the Federal and Texas Arbitration Acts require courts to stay litigation of issues that are subject to arbitration." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding).